# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JOANNE MARIE MAKI,**                  Case No. 1:18 CV 798

    Plaintiff,

    v.                                            Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                         MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Joanne Marie Maki ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 12). For the reasons stated below, the undersigned reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB in September 2015, alleging a disability onset date of April 23, 2015. (Tr. 267-68).[1] Her claims were denied initially and upon reconsideration. (Tr. 212-15, 219-21). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 226-27). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on June 16, 2017. (Tr. 139-81). On November 27, 2017, the ALJ found Plaintiff not disabled

---

1. Plaintiff later amended her alleged onset date to July 9, 2015. (Tr. 287).

in a written decision. (Tr. 10-21). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on April 9, 2018. (Doc. 1).

## FACTUAL BACKGROUND[2]

Personal Background and Testimony

Born in May 1957, Plaintiff was 58 years old on her amended alleged onset date, and 60 at the time of the ALJ hearing. *See* Tr. 149, 267. She had an associate's degree in accounting and business management (Tr. 149), and past work as a job costing clerk and cost estimator (Tr. 167-68).

At the time of the hearing, Plaintiff lived with her husband. (Tr. 148-49). Plaintiff testified she was fired from her prior job "after months of coming in late" two to three times per week. (Tr. 151). She also took leave due to her irritable bowel syndrome ("IBS") and asthma. *Id.* Plaintiff believed she was unable to work due to the fact that stress caused her IBS to flare up, as well as asthma and anxiety. (Tr. 152).

Plaintiff testified to IBS flare-ups at least once or twice per week; she took dicyclomine. (Tr. 156). Her IBS was better since being off work "[b]ecause the stress level[] [is] gone". *Id.*

Plaintiff also testified to difficulty getting along with coworkers and authority figures, in part because she was nervous speaking to others. (Tr. 157). Plaintiff specifically had difficulty with two co-workers, and one supervisor at her last job. (Tr. 157-58). However, she "got along fine" with a previous supervisor. (Tr. 161). Plaintiff also cried at work, and got in trouble for not finishing tasks. (Tr. 161-62). Toward the end of her employment, Plaintiff was "constantly worried

---

2. The undersigned only summarizes the evidence and testimony relevant to the arguments Plaintiff raises, which are directed at her mental health and her IBS.

2

about whether [she] was going to lose [her] job under new management or [due to the] health issues [she] was experiencing." (Tr. 162).

She was able to interact with her family members, but had some difficulty with her twin sister. (Tr. 158-59). She also stayed in touch with friends, but did not belong to any clubs or organizations. (Tr. 159).

Relevant Medical Evidence

*Physical*

Prior to her alleged onset date, in January 2013, Plaintiff went to North Shore Gastroenterology due to abdominal pain, gas, and diarrhea. (Tr. 386). Plaintiff reported an October 2012 emergency room visit for diarrhea and vomiting, and a negative CT scan. *Id.* Plaintiff ultimately underwent surgery and had her gallbladder and appendix removed. *Id.* Plaintiff was instructed to proceed with a colonoscopy with biopsy. (Tr. 386-87).

In June 2014, Plaintiff went to University Hospitals Elyria Medical Center with right-sided "crampy" abdominal pain. *See* Tr. 484-500. Plaintiff was prescribed Percocet and Phenergan (Tr. 488), and diagnosed with diarrhea on discharge (Tr. 497). At an appointment later that month, Plaintiff reported severe diarrhea with over ten stools one morning. (Tr. 708).

In March 2015, Plaintiff told a provider that she had been doing well until recently when her cramping abdominal pain recurred. (Tr. 705). She reported alternating diarrhea and constipation. *Id.* The provider prescribed a trial of Bentyl to treat possible bowel spasm. (Tr. 707). That same month Plaintiff underwent a CT enterography due to diverticulitis, generalized abdominal pain, diarrhea, and IBS. (Tr. 401). It revealed diffuse bowel wall thickening and diverticulosis of the sigmoid colon without evidence of acute diverticulitis. (Tr. 403).

A May 2015 small bowel series showed rapid small bowel transit time, and an unremarkable appearance of the small bowel with no significant residual bowel wall thickening or edema corresponding to the region of abnormality detected on the CT. (Tr. 396-97). At a follow up visit later that month, Plaintiff was noted to have "occasional crampy pain in low abdomen followed by diarrhea". (Tr. 571). Her medications were helpful, and the diarrhea resolved on its own. *Id.* The provider also noted Plaintiff "ha[d] many days of normal solid stool as well." *Id.* On examination, Plaintiff had a normal abdominal examination. (Tr. 572). The provider noted Plaintiff was "[c]urrently doing well" and "currently stable on fiber and [B]entyl." (Tr. 573).

In November 2015, Plaintiff reported three to four "formed to loose stools" daily, and "some right lower quadrant crampy pain from time to time . . . but [it] is not severe and does not travel." (Tr. 675). She noted the pain improved with Bentyl. *Id.* Plaintiff denied abdominal pain, constipation, diarrhea, indigestion, nausea and vomiting; on examination, she had normal bowel sounds and her abdomen was soft and not tender. (Tr. 676). The provider noted Plaintiff was "[c]urrently doing well and actually much better [since] she has been away from her job, which was quite stressful for her." (Tr. 677).

Plaintiff made similar statements and the provider noted similar findings in December. (Tr. 717). The provider noted Plaintiff's "crampy pain" was improved on dicyclomine, and he increased her dosage. (Tr. 719). Plaintiff reported increased stress after losing her job and having her house remodeled. *Id.*

Also in December 2015, Plaintiff told a consultative psychologist that she had abdominal cramping and bowel urgency and went to the bathroom seven to eight times per day. (Tr. 680). She always used the bathroom before leaving the house and had to know where a bathroom was when she was out. *Id.* Plaintiff also reported cramping and diarrhea with anxiety. (Tr. 681).

4

At a January 2016 mental health visit, Plaintiff reported she did not think she could work due to her IBS. (Tr. 562).

At an appointment in August 2016, Plaintiff reported diarrhea, heartburn, and indigestion, but denied abdominal pain, constipation, nausea, or vomiting. (Tr. 891). Plaintiff reported symptoms "approximately once or twice weekly that last for a day" including crampy abdominal pain followed by urgent diarrhea. (Tr. 892). She described two to four "formed to loose" stools daily and noted her symptoms could be improved within the day with medication. *Id.* The provider noted Plaintiff had IBS which was "now stable with [approximately] 2 days a week where she may have episodes of crampy pain, diarrhea, improve[d] with Bentyl and dicyclomine". (Tr. 894)

*Opinion Evidence*

In December 2015, State agency physician Steven McKee, M.D., reviewed Plaintiff's records and opined Plaintiff could: occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk a total of about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and occasionally climb ramps, stairs, ladders, ropes, or scaffolds. (Tr. 193-94).

In March 2016, State agency physician Gerald Klyop, M.D., offered an identical opinion, with an added restriction to avoid concentrated exposure to pulmonary irritants. (Tr. 208-09).

*Mental*

Records from the Far West Center in August 2015 show Plaintiff was diagnosed with an adjustment disorder with depressed mood, and assigned a Global Assessment of Functioning ("GAF") score of 55[3]. (Tr. 515). She reported a recent job loss with subsequent feelings of anxiety

---

3 A GAF score is a "clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503, n.7 (6th Cir. 2006). A score between 51-60 indicates "moderate symptoms (e.g., flat affect and

5

and depression. (Tr. 516). Plaintiff reported anxiety triggered by problems, particularly financial ones. (Tr. 517). On examination, she had a frustrated mood, broad affect, normal speech, ruminating thought process, good memory, fair concentration, and excessively talkative behavior. (Tr. 516); *see also* Tr. 522. Plaintiff was angry about her previous employer and how her complaints were handled. (Tr. 517). She self-reported a depressed mood, loss of appetite, fatigue, and low motivation. *Id.* She stated she was "extremely nervous", with mood swings, and had "no patience." (Tr. 518). She noted a prior prescription for Zoloft from 2012. *Id.* The provider recommended individualized counseling to address her symptoms and gain coping skills. (Tr. 522).

In September, Plaintiff wanted to talk to someone about her mood swings. (Tr. 530). She described difficulties in her previous job with a coworker and supervisor. *Id.* At another visit that month, Plaintiff rated her anxiety as 5/10 and her depression 6/10. (Tr. 529). She reported coping by walking her dog, "bargain shopping" and finding "enjoyable activities" at home to keep busy. (Tr. 529, 530). On mental status examination at both visits, she had a sad/angry mood, congruent affect, normal speech, goal-oriented thought process, excessively talkative behavior, good memory and concentration, and fair insight and judgment. (Tr. 529, 530). *Id.* Plaintiff was prescribed Abilify and Zoloft, diagnosed with major depressive disorder, and again assigned a GAF score of 55. (Tr. 534).

In early October 2015, Plaintiff described her mood as: "I'm good". (Tr. 526). She had a euthymic affect, normal speech, goal-oriented thought process, appropriate behavior, good memory and concentration, and fair insight and judgment. (Tr. 526). Plaintiff was coping by walking her dog and spending more time with her family. *Id.* Plaintiff's mental status examination

---

circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000).

was unchanged two weeks later. (Tr. 524). Plaintiff was coping by taking Abilify and "keeping busy spending time with family". *Id.* She remained angry about her prior work and was noted to have a "serious impairment in occupational functioning." *Id.*

In November 2015, Plaintiff's mood was depressed with mood swings and she was noted to be positive for anxiety. (Tr. 563). She was calm and cooperative, and her thought process, memory, and attention/concentration were within normal limits. *Id.* She had low motivation and energy, and her judgment and insight were fair. *Id.*

In December 2015, Plaintiff underwent a consultative psychological examination with Ronald Smith, Ph.D. (Tr. 678-83). Plaintiff reported she started using Zoloft in 2009, and started using Abilify two months prior after being laid off; both medications were helpful. (Tr. 680). On examination, Dr. Smith noted Plaintiff was cooperative and "very pleasant". *Id.* Plaintiff's thinking was well-organized and she had "appropriate affective expression with a good range of affect displayed". (Tr. 681). Plaintiff reported depression, and was "a little tearful", stating that she cries at home at least once per week. *Id.* Plaintiff reported feeling anxious and nervous about money and "said she's mainly a worrier". *Id.* Plaintiff "was alert and in good contact with reality"; however, she reported problems with short term memory due to medication (Topamax). *Id.* Plaintiff was able to count backwards from twenty to one in nine seconds, say the alphabet in nine seconds, and count from one to forty by threes, making only one error. *Id.* Dr. Smith observed Plaintiff's insight and judgment were good. (Tr. 682). Plaintiff told Dr. Smith that she did dishes, cooked, shopped alone, and ate out in restaurants. *Id.* Dr. Smith diagnosed adjustment disorder with anxiety and depressed mood, in partial remission. *Id.*

That same month, at a visit for asthma and an upper respiratory infection, Plaintiff's mood, affect, and judgment were "good"; she had no memory loss. (Tr. 686). The provider added: "An emotionally stable and cheerful person with no mood and affect disorders." *Id.*

In January 2016, Plaintiff reported she believed Abilify improved her depressed mood and gave her more energy. (Tr. 562). The provider noted that "[o]verall" Plaintiff did well "until her anger [was] triggered by hearing from co-worker from former job." *Id.* This triggered her anger about being fired and anxiety about future income. *Id.* On examination, her attitude was calm and cooperative, and her mood was improved ("but emotions can be easily triggered"). *Id.* She had a full affect and normal thought process, memory, and attention/concentration. *Id.* Her energy was low, and she was "learning coping skills." *Id.* Plaintiff's anxiety had improved. *Id.*

*Opinion Evidence*

After his December 2015 consultative psychological examination, Dr. Smith opined Plaintiff was capable of understanding, remembering, and carrying out job instructions, and "should be able" to deal appropriately with supervisors and coworkers, as well as "with most work pressures". (Tr. 682-83). Dr. Smith opined Plaintiff "should be able to maintain adequate attention and concentration except for times when she becomes anxious and depressed." (Tr. 683).

Other Relevant Evidence

In May 2017, Plaintiff's sister, Betsy Tilgner, completed a third-party function report. (Tr. 365-72). Ms. Tilgner reported Plaintiff's stress caused her IBS to flare up, which in turn caused her to be late or miss work. (Tr. 365). She reported Plaintiff's conditions affected her sleep and she sometimes needed help doing her hair (Tr. 366). According to Ms. Tilgner, Plaintiff occasionally forgot to take her medications, prepared simple meals (but did not "really cook meals"), and sometimes needed help with laundry and dishes. (Tr. 367). Plaintiff needed reminders

8

about appointments. (Tr. 369). Ms. Tilgner also noted Plaintiff had "issues" with coworkers and family and that she was "[e]asily set off because of stress". (Tr. 370). Her stress level had improved since she stopped working. *Id.* Ms. Tilgner noted Plaintiff would become withdrawn when stressed, and did not handle stress or routine changes well. (Tr. 371).

VE Testimony

At the hearing, the VE testified that an individual of Plaintiff's age, education, experience and RFC (as determined by the ALJ) could perform her past work (as classified, but not as performed) as a job costing clerk or cost estimator. (Tr. 168-72). The VE also testified that missing three days of work per month, or being off-task greater than twenty percent of the day would preclude competitive work. (Tr. 175-76).

ALJ Decision

In her November 27, 2017 written decision, the ALJ found Plaintiff met the insured status requirements for DIB through December 31, 2019 and had not engaged in substantial gainful activity since her amended alleged onset date of July 9, 2015. (Tr. 12). The ALJ found Plaintiff had severe impairments of asthma, essential hypertension, sleep-related breathing disorder, anxiety, affective disorders, left carpal tunnel, right knee status post arthroscopic surgery, spine disorders, and obesity. *Id.*[4] The ALJ found that none of these impairments – singly or in combination – met or medically equaled the severity of a listed impairment. (Tr. 13). The ALJ then set forth Plaintiff's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; be frequently exposed to fumes, odors, dust, gases, and poor vision; frequent right use of foot controls; frequent left handling and

---

4. As will be discussed in greater detail below, the ALJ also considered Plaintiff's IBS and diverticulitis, but found them non-severe. (Tr. 13).

9

fingering; cannot work at a production rate pace; and should be limited to routine workplace changes.

(Tr. 15). The ALJ then found Plaintiff was capable of performing her past relevant work as a costing clerk and cost estimator as those jobs are generally performed; alternatively, the ALJ found there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. (Tr. 19-21). Therefore, she found Plaintiff not disabled. (Tr. 21).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises four challenges to the ALJ's decision, all directed at the RFC. First, she argues the ALJ erred in assigning great weight to Dr. Smith's opinion, but not incorporating (or explaining her decision not to incorporate) all restrictions opined therein. Second, she argues the ALJ erred in finding her IBS non-severe and not including any functional restrictions therefrom in

the RFC. Third, she argues the ALJ erred in failing to evaluate a function report completed by her sister. Finally, she argues the ALJ's analysis of her subjective symptoms is not supported. For the reasons discussed below, the undersigned remands the Commissioner's determination for further evaluation of Plaintiff's IBS.

Dr. Smith

Plaintiff first argues the ALJ erred in assigning "great weight" to Dr. Smith's opinion, but failing to incorporate every limitation opined therein without explanation.

In evaluating Plaintiff's mental impairments, the ALJ explained, in relevant part:

> As for the claimant's mental impairments, mental status examinations also showed mostly normal findings including the findings of the mental consultative examiner. Though the claimant[']s impairments cause limitations for the claimant, those limitations are captured in the above residual functional capacity.
>
> As for the opinion evidence, I considered the opinion of the state agency medical consultants (2A, 4A). Significant weight is afforded to the opinions of the state agency medical consultants. The state agency medical consultants have program knowledge and were able to review the medical record.
>
> I considered the opinions of the mental health consultative examiner (15F). Great weight is afforded to the opinions of the mental heath consultative examiner. He was able to personally examine the claimant, has program knowledge, and issued opinions within his area of medical expertise that were consistent with the medical record as a whole and the consultative examiner's own findings.

(Tr. 18).

Preliminarily, Plaintiff is correct that Dr. Smith offered an opinion that the ALJ did not include in the RFC – that Plaintiff "should be able to maintain adequate attention and concentration *except for times when she becomes anxious or depressed.*" (Tr. 683) (emphasis added). However, an ALJ is not required to adopt every facet of an opinion, even when assigning it great weight. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Although the ALJ gave great weight to [a physician's] opinion, he was not required to incorporate the entirety of her

12

opinion, especially those findings that are not substantially supported by evidence in the record."); *White v. Comm'r of Soc. Sec.*, 970 F. Supp. 2d 733, 753-54 (N.D. Ohio 2013) ("The fact that the ALJ did not incorporate all of [a physician's] restrictions, despite attributing significant weight to his opinion, is not legal error in and of itself."); *Smith v. Colvin*, 2013 WL 6504681, at *11 (N.D. Ohio) (ALJ who attributes "great weight" to state-reviewing psychologist opinions not required to include in claimant's RFC every limitation assessed therein). While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner. *Ford v. Comm'r of Soc. Sec.,* 114 F. App'x 194, 198 (6th Cir. 2004) (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546). "[T]here is no requirement that an ALJ accept every facet of an opinion to which he assigned significant or substantial weight." *Smith*, 2013 WL 6504681, at *11.

Further, as the ALJ noted in this case, "mental status examinations also showed mostly normal findings including the findings of the mental consultative examiner." (Tr. 18). This is supported by the record. Records from the Far West Center show a sometimes frustrated, depressed, agitated, or sad/angry mood, but also normal thought process, good memory, and concentration that was good, fair, or "within normal limits". *See* Tr. 516-17, 522, 524, 526, 529-30, 563. Notably, even when Plaintiff's mood was noted to be "frustrated" or she reported depression, her observed memory was "good" and concentration was "fair" or "good". *See* Tr. 516-17, 522, 529, 530, 563. And, as the ALJ noted, Dr. Smith's own evaluation was relatively normal. *See* Tr. 680 (noting Plaintiff was "cooperative with the examiner and very pleasant in her manner" and that her responses were direct, and her thinking well-organized); Tr. 681 (noting Plaintiff was alert, well-oriented, and able to perform various cognitive tasks).

Furthermore, the ALJ's RFC included mental limitations to accommodate Plaintiff's mental impairments. Specifically, she limited Plaintiff to no "production rate pace" work and to

13

jobs with "routine workplace changes." (Tr. 15). At the beginning of her discussion of the discussion of the opinion evidence, the ALJ stated: "Though the claimant[']s impairments cause limitations for the claimant, those limitations are captured in the above residual functional capacity." (Tr. 18). And at the end of the RFC analysis, she stated:

> Furthermore, to account for mental health symptoms, I further limited the claimant to not being able to work at production rate pace and the claimant should be limited to routine workplace changes. In sum, I find the foregoing limitations contain all inferences regarding the claimant's impairments and the degree of severity thereof, which the objective evidence substantiates, and that the evidence warrants no further degree of restriction.

(Tr. 19). Read as a whole, the undersigned finds no error in the ALJ's consideration and evaluation of Dr. Smith's opinion and ultimate mental RFC determination.

## IBS

Plaintiff next contends the ALJ erred in finding her IBS non-severe, and in failing to consider limitations therefrom in formulating the RFC. The undersigned finds remand is necessary for further consideration of Plaintiff's IBS and related symptoms.

At Step Two, the ALJ explained:

> I considered irritable bowel syndrome (IBS) and diverticulitis. Though these impairments may have been diagnosed in the record by an acceptable medical source, they did not cause more than a minimal effect on the claimant's ability to perform basic work activities for the required duration. Therefore, they are nonsevere impairments.

(Tr. 13).

The Sixth Circuit has characterized the severity determination as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The reason for assessing severity is "to screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Accordingly, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age,

14

education, and experience." *Higgs*, 880 F.2d at 862. Because an ALJ is required to consider both severe and non-severe impairments in the remaining steps of the sequential analysis, the failure to consider some impairments non-severe may be harmless error. *Maziarz v. Sec'y of Health & Human Servs*, 837 F.2d 240, 244 (6th Cir. 1987). However, this is true only where an ALJ does in fact consider all of a claimant's impairments in the subsequent analysis. This is so because SSR 96-8p requires an ALJ to "consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 3744184, at *5 (emphasis added); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of [a claimant's] medically determinable impairments of which we are aware, including [her] medically determinable impairments that are not 'severe' ...."); *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009) ("Once one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe."). "Notably, the definition [of a non-severe impairment] contemplates that non-severe impairments may very well impose *some type* of limitation on basic work activities; accordingly, an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment—either singly or in combination with a claimant's other impairments—does not impose *any* work-related restrictions." *Katona v. Comm'r of Soc. Sec.*, 2015 WL 871617, at *6 (E.D. Mich.) (citing 20 C.F.R. § 404.1521(a), defining a non-severe impairment as one that "does not *significantly* limit [a claimant's] physical or mental ability to do basic work activities." (emphasis added)).

The only mention of Plaintiff's IBS beyond the somewhat-cursory two sentences at Step Two was contained in a summary of Plaintiff's allegations of impairments causing disability and a vague reference to her testimony:

> The claimant alleged asthma, *IBS*, lower back/spinal pain, arthritis, depression, adjustment disorder, cataracts, migraines, and sleep apnea (3E). The claimant's

15

> sister stated the claimant has problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, and using her hands (11E). The claimant testified she was unable to work due to asthma, *IBS*, anxiety, sleep problems, carpal tunnel disorder, and lower back problems. She testified she had successful carpal tunnel surgery. The claimant said she gets asthma flare-ups 1 to 2 times per week, but got them more often when she was working. She indicated she feels treatments are helping. The claimant stated she has problems concentrating. *The claimant also testified to additional symptoms from the above impairments.*

(Tr. 16) (emphasis added). It is at best unclear whether the ALJ considered the cumulative effect of Plaintiff's non-severe IBS impairment with her other impairments when formulating the RFC. There is no mention of Plaintiff's testimony that she missed or was late to work due to her IBS, or that work stress caused her IBS to flare up. (Tr. 151-52); *see also* Tr. 334 (function report) Similarly, as Plaintiff points out, there was no mention of her sister's third-party function report of similar statements regarding IBS. (Tr. 365).[5] And, perhaps most significantly, there is no discussion of the above-described IBS treatment in the decision. It is thus impossible for the Court to tell if the ALJ considered it at all.

---

5. Plaintiff argues the ALJ's failure to consider her sister's report is reversible error both because it compounded the ALJ's error in evaluating her IBS, and because the regulations require an ALJ to evaluate such evidence. Plaintiff candidly acknowledges that "[w]hile this error, standing alone, may not be sufficient as a singular basis to remand the case, taken in combination with the ALJ's error in evaluating Dr. Smith's opinion and her IBS, the ALJ's error in this regard cannot be held 'harmless'." (Doc. 13, at 17). The ALJ is required to "consider" evidence from other sources. SSR 06-3p, 2006 WL 2329939, at * 2, 6. There is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002). "An ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x. 485, 489 (6th Cir. 2005). Indeed, other district courts have concluded that "SSR 06-3p does not require that an ALJ discuss opinions supplied by 'other sources' or to explain the evidentiary weight assigned thereto." *Hickox v. Comm'r of Soc. Sec.*, 2010 WL 3385528, at * 7 (W.D. Mich.). Thus, the undersigned agrees with Plaintiff that failure to cite these statements in the function report alone does not provide an independent justification for remand, but remands for further consideration of Plaintiff's IBS more generally.

The Commissioner offers an analysis of that evidence, arguing it did not support further restrictions. (Doc. 15, at 10). But this analysis was not advanced by the ALJ, and is, rather, a *post-hoc* justification for not including further analysis or limitations in the RFC. While the analysis provided might be persuasive if offered by the ALJ as a reason for rejecting any further RFC limitations based on Plaintiff's IBS and related symptoms, the Court cannot consider such a *post-hoc* rationalization in evaluating an ALJ's decision. *See Williams v. Comm'r of Soc. Sec.*, 227 F. App'x 463, 464 (6th Cir. 2007) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)) (a reviewing court, in assessing the decision of an administrative agency, must judge its propriety solely by the grounds invoked by the agency).

Thus, although the Commissioner is correct that an ALJ's determination that finding an impairment is non-severe at Step Two may be harmless error as long as the ALJ finds at least one impairment severe, this is only so if ALJ considers all impairments – both severe and non-severe – at the remaining steps. *See, e.g., Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) (plaintiff's argument that the ALJ erred in finding an impairment non-severe at step two was without merit where the ALJ clearly considered all of the claimant's impairments in the RFC assessment); *Dyer v. Comm'r of Soc. Sec.*, 2018 WL 2445084, at *6 (M.D. Tenn.) (finding misclassification at step two harmless error where "ALJ continued with the *full analysis* of plaintiff's mental health impairments") (emphasis added), *report and recommendation adopted by* 2018 WL 3609520 (M.D. Tenn.); *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (noting that the "record reflects that the ALJ gave the appropriate consideration to both Walton's severe and non-severe impairments post-Step Two"). Where, as here, it is not clear that an ALJ did so, courts remand for further consideration. *See, e.g., Hood v. Comm'r of Soc. Sec.*, 2019 WL 1116185, at *2 (N.D. Ohio) ("Under these circumstances, the Court cannot determine whether the

ALJ's failure to consider Hood's spondylolisthesis at step two was harmless, and remand is necessary."). As such, the undersigned finds remand is necessary here.

Subjective Symptoms

Finally, Plaintiff argues the ALJ's credibility determination is defective "based on the foregoing errors, but also specifically because it neglects to consider Plaintiff's stellar work history." (Doc. 13, at 17). To the contrary, the undersigned notes that the Sixth Circuit has specifically held that an ALJ "[is] is not required to explicitly discuss [a claimant's] work history when assessing [her] credibility" so long as the ALJ provides other substantially supported reasons to justify her analysis of a claimant's subjective symptoms. *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) (rejecting argument that "the ALJ erred by failing to consider his consistent and arduous work history when evaluating his credibility"). And, as noted previously, there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Delgado*, 30 F. App'x at 547-48. While there is no question that a claimant's positive work history can bolster her credibility, an ALJ is not required to explicitly discuss that work history. *See Dutkiewicz*, 663 F. App'x at 433; *see also Bond v. Comm'r of Soc. Sec.,* 2017 WL 2929480, at *6 (W.D. Tenn.) ("[W]hile a good work history may bolster a claimant's credibility, it alone does not require the ALJ to find a claimant credible.").

The undersigned does find, however, for the same reasons stated above, that the ALJ failed to provide any analysis of Plaintiff's subjective symptom statements surrounding her IBS. As such, the Commissioner is instructed to do so on remand, consistent with the above.

## Conclusion

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB not supported by substantial evidence and reverses and remands that decision pursuant to Sentence Four of 42 U.S.C. § 405(g).

          s/ James R. Knepp II
          United States Magistrate Judge